**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 5-31-2021**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   18-cr-33-01-JL
          v.                        *   August 27, 2020
                                    *   1:44 p.m.
     SERGIO MARTINEZ                 *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:

For the Government:      Seth R. Aframe, AUSA
                         Georgiana Konesky, AUSA
                         U.S. Attorney's Office


For the Defendant:       Robert L. Sheketoff, Esq.
                         Sheketoff Law Offices

                         William Keefe, Esq.
                         Law Office of William Keefe



Probation:               Sean Buckley



Court Reporter:          Susan M. Bateman, RPR, CRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, NH 03301
                         (603) 225-1453

```
 1                    P R O C E E D I N G S
 2               THE CLERK:  The Court has before it for
 3    consideration this afternoon a sentencing in criminal case
 4    18-cr-33-01-JL, United States of America versus Sergio
 5    Martinez.
 6               I could let you know who we have participating in
 7    the conference today.
 8               For Mr. Martinez we have Attorneys Robert Sheketoff
 9    and William Keefe.
10               For the United States Attorney's Office we have
11    Attorney Georgie Konesky and Seth Aframe.
12               U.S. probation officer, Sean Buckley, and then we
13    have some observers as well.
14               THE COURT:  Thank you.
15               All right.  Just give me one moment, counsel.  Just
16    a second.
17               (Pause)
18               All right.  We are here convened on a video
19    conference platform because of the public health emergency
20    caused by the coronavirus pandemic.
21               My understanding, Mr. Sheketoff, is that you're
22    comfortable proceeding that way today?
23               MR. SHEKETOFF:  I am, your Honor.
24               THE COURT:  All right.
25               There's a couple of findings necessary anyway so
```

1    I'll go through those just to make sure that we're conducting
2    a lawful proceeding.
3            Well, first things first.  It's very important, Mr.
4    Martinez, that you're able to communicate with Mr. Sheketoff
5    and Mr. Keefe.  If you need to do that, we can arrange a
6    breakout room for the three of you to speak together privately
7    outside of our hearing and under the protection of the
8    attorney-client privilege anytime you want.
9            Do you understand that?
10           THE DEFENDANT:  Yes, your Honor.
11           THE COURT:  Okay.  So just -- and I know your
12   counsel are aware of that, but all you need to do is get my
13   attention and we'll make that happen if need be.
14           The Chief Judge here and the court in general have
15   issued some administrative rulings regarding the conduct of
16   court operations during the coronavirus pandemic, and they
17   contain some factual findings and some legal conclusions.
18   They are administrative order numbers 20-7, 20-8, 20-11,
19   20-13, 20-25, 20-26, 20-27 and 20-28.  I want to make
20   reference to each of those orders now and incorporate them by
21   reference and adopt their findings and conclusions regarding
22   the health and safety of in-person hearings in a public
23   courtroom.
24           Mr. Sheketoff, is it your opinion that further
25   delaying this proceeding would jeopardize the interests of

1    justice?

2              MR. SHEKETOFF:  Yes.

3              THE COURT:  Can you just tell me why?

4              MR. SHEKETOFF:  He's been held in a county jail for

5    a significant period of time, your Honor, in large part

6    because of COVID-19.

7              THE COURT:  Yeah.

8              MR. SHEKETOFF:  And I believe it's in his best

9    interests to move forward to be sentenced and to be designated

10   by the Bureau of Prisons and be in an institution that he has

11   a chance to adjust to that's a federal institution.

12             THE COURT:  Understood.

13             Any objection, Ms. Konesky?

14             MS. KONESKY:  No, your Honor.

15             THE COURT:  All right.  All right then.

16             Well, the Court finds that it would endanger public

17   health and safety to conduct this hearing with the parties

18   physically present in a public courtroom, and the Court

19   further finds that further delay of this proceeding would

20   jeopardize the interests of justice for the reasons stated by

21   defense counsel.  So we'll proceed by this video conference

22   platform.

23             I should note for the record that this is a public

24   proceeding.  It's been posted to the public, and I do believe

25   we have some observers from the public who have linked -- or

1    who are participating as spectators through the video

2    conference platform.  And if we have any other requests during

3    the hearing, we'll certainly provide that access because it's

4    important that the public have access to this, whether it be

5    friends and supporters and family of Mr. Martinez or the media

6    or interested members of the public.

7           All right.  Now, this is somewhat of a unique

8    proceeding because it was a binding plea agreement under

9    Federal Rule of Criminal Procedure 11(c)(1)(C) and it occurred

10   during a jury trial, I think it was day four or five if I

11   remember correctly.  We were well into the jury trial when the

12   parties reached an agreement, a binding plea agreement.

13          It doesn't change though, Mr. Martinez, that my job

14   -- the law requires that I determine what the U.S. sentencing

15   guidelines recommend for your sentence.  As part of that

16   process, to figure that out, I use this presentence report

17   that I'm holding up right now.  Do you see that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  I assume you've seen this before,

20   you've read it with your lawyer?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  All right.  Do you have any questions

23   about it at all?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Okay.  If that changes, you can ask me

1   questions anytime you want.  Of course you can consult with

2   your counsel anytime you want privately if you would like.

3            All right.  I've been through it.  I've read it.

4   As far as I can tell based on what I've read in the file,

5   neither side has any objections to it that they want to point

6   out.

7            Am I right about that, Mr. Sheketoff?

8            MR. SHEKETOFF:  From the defense, that's correct.

9            THE COURT:  And the prosecution?

10           MS. KONESKY:  Correct, your Honor.

11           THE COURT:  All right.

12           It appears then that the guideline sentencing range

13  in this case is life imprisonment followed by 1 to 3 years of

14  supervised release on certain counts, 2 to 5 years on certain

15  other counts, a fine of between $50,000 and $5,271,276, and a

16  $200 statutory assessment.  That's $100 per count of

17  conviction.

18           Any disagreement with that guideline sentencing --

19  not accepting the range, but that that is the range?

20           Mr. Sheketoff?

21           MR. SHEKETOFF:  No.

22           THE COURT:  Ms. Konesky?

23           MS. KONESKY:  No.  That's correct, your Honor.

24           THE COURT:  All right.

25           The Court therefore adopts the presentence

1    investigation report in full without exception.  It will be

2    placed in the record under seal should either party want

3    access to it in the future.  All right.  So it's sealed.

4            All right.  So this is a binding plea to a very

5    severe sentence.  I'm happy to listen to anything counsel

6    wants to tell me.

7            Who's speaking for the prosecution on the

8    recommendation?

9            MS. KONESKY:  I'll speak, your Honor.

10           THE COURT:  Please.

11           MS. KONESKY:  Thank you, your Honor.

12           This Court is very familiar with this case, and so

13   I won't sort of repeat the facts that I know your Honor is

14   familiar with and which have been laid out in the presentence

15   report except to say that this is a very serious crime and Mr.

16   Martinez was the leader of an extremely organized, extremely

17   profitable, extremely dangerous drug trafficking organization

18   for many years.

19           The Court heard evidence at trial about the

20   substantial quantities of fentanyl that this group put on the

21   street.  In Mr. Martinez's own words, that he was distributing

22   50 and 20, 30 kilos a month and the evidence of daily

23   distribution of up to a kilo a day on the streets.  Evidence

24   of New Hampshire license plates lining the streets of Lawrence

25   waiting to be served by Mr. Martinez's workers.

1          The Court heard evidence of hundreds of thousands

2     of dollars being laundered and sent to the Dominican Republic

3     as profits of Mr. Martinez's business.  It heard evidence of

4     the many, many people in Lawrence who worked for him.  It

5     heard evidence of violence used by Mr. Martinez's

6     distributors, robberies of dealers and of gang members working

7     for him.

8          This is a crime that has touched all parts of New

9     England and the state of New Hampshire.

10         Observing the hearing today is the mother of

11    someone who used Mr. Martinez's drugs and who died of a drug

12    overdose, and that just brings to the forefront why this is an

13    incredibly serious crime.

14         For that reason, your Honor, and I would be happy

15    to go into more detail if it's necessary but, you know, we

16    have agreed on, as the Court knows, a sentence of 45 years,

17    forfeitures, and a money judgment as well, but I'm happy to

18    address any other issues if the Court would like to hear more.

19         THE COURT:  Thank you, counsel.

20         Mr. Sheketoff.

21         MR. SHEKETOFF:  So this is a binding agreement,

22    your Honor.  I'm honor bound to not suggest anything else is

23    appropriate.  Therefore, there's not much I can say.

24         THE COURT:  Understood.  All right.

25         It actually requires a variance, a downward

1    variance and, you know, obviously I don't have any difficulty

2    imposing it.

3            Mr. Martinez, you don't have to speak today.  You

4    don't have to say a word, and I wouldn't hold it against you

5    if you didn't speak or I can't imagine holding it against you

6    if you wanted to say something.  So if there's something you

7    want to say, this is your opportunity.

8            THE DEFENDANT:  Well, I guess, your Honor, just to

9    apologize, apologize to the prosecutor, apologize to the

10   officer involved in this case, to the victim.  I don't know

11   who it is, if it's an aunt or a cousin, I apologize to every

12   one of them and say that I'm sorry for all the trouble that I

13   have caused in this investigation.

14           THE COURT:  Thank you, sir.

15           All right.  Is there anyone else who's present on

16   the video conference platform in the proceeding who wants to

17   be heard today who would like me to listen to them?

18           I don't see anybody making themselves known.  Okay.

19   All right then.

20           There's very little to say here.  The Court deems

21   the stipulation reasonable and accepts the agreement and will

22   impose the joint recommendation.

23           I will explain -- it requires a variance, and that

24   requires an explanation for the Court's rationale.  I don't

25   mean to belabor this putting anybody -- make it more trying

1    for anybody than it needs to be, but what I've attempted to do

2    here is -- by listening to counsel and their reasons for their

3    stipulation and what I observed at the jury trial, I've tried

4    to fashion a sentence here, and it was primarily fashioned by

5    counsel of course, that's not more severe than necessary, but

6    it is sufficient to meet the following purposes:

7           First, to reflect the seriousness of the offense,

8    promoting respect for the law, and public protection.

9           Second, to afford adequate deterrence.

10          Third, to protect the public.

11          Fourth, to provide the defendant with needed

12   correctional treatment and related treatment in the most

13   effective manner.

14          The Court has considered the probation officer's

15   comments and the comments of counsel, and these factors,

16   whether viewed separately or collectively, viewed in the

17   context of the offense conduct, the defendant's history, the

18   need for deterrence, respect for the law, and public

19   protection make a variance from the guideline sentencing range

20   appropriate in this case.

21          The Court's variance and its sentence are based

22   solely on the parties' binding plea agreement under Rule

23   11(c)(1)(C) which the Court deems reasonable and not on any

24   calculation or application of the U.S. sentencing guidelines.

25          The Court has considered the following statutory

1  factors set forth at Section 3553(a) of Title 18 in imposing

2  this sentence:

3          First, the nature and circumstances of the offense.

4          Second, the history and characteristics of the

5  defendant.

6          Third, the kinds of sentences statutorily

7  available.

8          Fourth, both the kinds of sentences and the

9  advisory sentencing range established by the U.S. sentencing

10  guidelines.

11          Fifth, the policy statements issued by the U.S.

12  sentencing commission under the applicable guidelines which

13  the Court has reviewed and considered.

14          Sixth, the need to avoid unwarranted sentencing

15  disparities in situations involving similar conduct and

16  similar criminal records.

17          And finally, seventh, the need to provide

18  restitution.

19          The fact that the sentence involved the calculation

20  of and then a variance from the applicable guideline

21  sentencing range ensures that the consideration of each factor

22  which the Court has undertaken independently as well is

23  reflected by the sentence.

24          The Court notes that while it undertook these U.S.

25  sentencing guideline calculations as a preliminary matter as

1    required by applicable circuit law, the sentence imposed was

2    based not on any calculation or application of the U.S.

3    sentencing guidelines but rather on the Court's adoption of

4    the parties' binding plea agreement under Rule 11(c)(1)(C)

5    which again the Court deems reasonable.

6            The sentence, including the variance from the

7    guideline sentencing range, is sufficient, but not more severe

8    than necessary to facilitate and serve the statutory and

9    traditional functions of sentencing.

10           That's the rationale.  Any questions from the

11   prosecution?

12           MS. KONESKY:  No, your Honor.

13           THE COURT:  Defense?

14           MR. SHEKETOFF:  No, Judge.

15           THE COURT:  All right.  Okay.  Then the Court will

16   impose sentence:

17           Let me ask a couple of questions first.

18           Mr. Sheketoff, I don't know if the family plans

19   visitation or anything of that nature, but if so, I could

20   recommend a certain location if you like.

21           MR. SHEKETOFF:  So because he does have young

22   children -- I just don't know where the Bureau is going to

23   designate him, but if you could recommend either Fort Devens,

24   which is in Massachusetts, the only institution in

25   Massachusetts, I would appreciate it, your Honor, but I don't

1    know if that's realistic.

2              THE COURT:  Well, so in other words the family will

3    remain in the New England area?

4              MR. SHEKETOFF:  Yes.

5              THE COURT:  All right.  All right.

6              The other thing is this.

7              Mr. Martinez, I've got to show you something here.

8    I have a copy of this acknowledgment and it appears to have

9    your signature on it.  It's attached to the probation

10   officer's recommended conditions of supervised release, the

11   conditions you'll live under when you're released from prison.

12             This tells me that you have received those, you've

13   read them, and you understand them.  Is that true?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  All right.  Mr. Sheketoff, do you know

16   of any reason why your client should object to any of these

17   conditions of supervised release?

18             MR. SHEKETOFF:  No.  It's so far in the future,

19   your Honor, that I think if there was a reason, we would raise

20   it then, but it won't be with me.

21             THE COURT:  Understood, counsel.

22             Okay then.  That acknowledgment will be docketed at

23   docket number 1059.

24             Pursuant to the Sentencing Reform Act of 1984, and

25   having considered the sentencing factors enumerated at Section

1    3553(a) of Title 18, it's the judgment of the Court that the

2    defendant, Sergio Martinez, is hereby committed to the custody

3    of the Bureau of Prisons to be imprisoned for a term of 540

4    months.  That term consists of a term of 240 months on Count

5    3sss and a term of 540 months on Count 13sss to be served

6    concurrently.

7            Upon release from imprisonment the defendant shall

8    be placed on supervised release for a term of three years.

9    The term consists of three years on Counts 3sss and 13sss

10   which terms run concurrently.

11           Within 72 hours of release from the Bureau of

12   Prisons the defendant shall report in person to the district

13   to which he's released.

14           The Court recommends that the defendant's

15   incarceration be conducted at the closest practical facility

16   to the district of Massachusetts in order to facilitate

17   visitation by the victim's family which the Court thinks will

18   facilitate the defendant's rehabilitation as well as his good

19   behavior while incarcerated.

20           While under supervision the defendant must comply

21   with the standard conditions that have been adopted by this

22   Court and must comply with the mandatory and proposed special

23   conditions attached to the presentence report and attached to

24   the defendant's acknowledgment docketed again at number 1059

25   on the docket.

1    The defendant shall pay to the United States a

2  special assessment of $200.  It's due in full immediately.

3    Do the parties have a joint recommendation as to a

4  fine or is that not part of the agreement?

5    MS. KONESKY:  There's nothing in the agreement with

6  respect to a fine, your Honor, but there is, and I would

7  request that the Court include this in the judgment, a money

8  judgment of $2 million and various forfeitures that are

9  enumerated in the final order of forfeiture which is pending.

10    THE COURT:  Yeah, I was going to just grant the

11  motion for the final order of forfeiture which I think

12  incorporates all of that.  That was my plan.

13    Any objection to that?

14    MR. SHEKETOFF:  No, your Honor.

15    I would ask that you not impose a fine.  It's a

16  significant money judgment and he's going to be incarcerated

17  for a very long period of time.

18    THE COURT:  Okay.  So the agreement doesn't cover a

19  fine?  All right.

20    MR. SHEKETOFF:  It does not.

21    THE COURT:  All right.  Well, the Court's not going

22  to impose a fine in this case because of the size of the --

23  the very substantial size of the money judgment.

24    MR. AFRAME:  Can I just interject, Judge?

25    I agree with the fine, no fine.

1          It is important though I think that the Court say

2     as part of the sentence the things that are being forfeited

3     and not just refer to the motion.  It's technical, but I think

4     that's actually required.

5          THE COURT:  I'm not sure if you're right, but I

6     don't have any problem doing that and I'm happy to do it.

7     Just give me a moment.

8          All right.  The preliminary order of forfeiture is

9     final.  It shall be made part of the sentence in this case.

10         The Court enters a personal money judgment in the

11    amount of $2 million and the title to 22 Morton Street.

12         That's in the city of Lawrence?

13         MS. KONESKY:  Yes, your Honor.

14         THE COURT:  All right.

15         As well as 31 Manchester Street in the city of

16    Lawrence, Massachusetts, 82 Water Street in the city of

17    Lawrence, Massachusetts, again 22 Morton Street in the city of

18    Lawrence, and all funds in Banco Popular Dominicano account

19    numbers 794605782 and 795430263.

20         All right.  Those are the terms of the sentence.

21         Are there any questions from the prosecution?

22         MS. KONESKY:  No, your Honor.  Thank you.

23         THE COURT:  Defense counsel?

24         MR. SHEKETOFF:  No, your Honor.

25         THE COURT:  All right then.

1           Mr. Martinez, you have the right to appeal this

2    sentence to the U.S. Court of Appeals.  If you take an appeal,

3    you must file it within 14 days of the entry of judgment.

4           All right then.  Is there anything further for the

5    Court?

6           MS. KONESKY:  No.  Thank you, your Honor.

7           THE COURT:  All right.

8           MR. SHEKETOFF:  No, your Honor.

9           THE COURT:  The defendant is remanded to the

10   custody of the United States Marshal.

11          I hope -- everybody here, I hope all your families

12   are healthy and intact and virus-free and that they remain

13   that way.

14          We're adjourned.

15          (Conclusion of hearing at 2:08 p.m.)

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.


Submitted: 3-1-21        /s/   Susan M. Bateman
                         SUSAN M. BATEMAN, RPR, CRR